# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2023

Lyle W. Cayce
Clerk

No. 22-30159

SAMUEL GALBRAITH,

*Petitioner—Appellee,*

*versus*

TIM HOOPER, *Warden, Louisiana State Penitentiary,*

*Respondent—Appellant.*

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-181

Before STEWART, DENNIS, and SOUTHWICK, *Circuit Judges.*

LESLIE H. SOUTHWICK, *Circuit Judge*:

Samuel Galbraith, a Louisiana prisoner, sued the Louisiana Board of Pardons and Parole ("Parole Board"), seeking to have his parole reinstated on the grounds that its rescission just prior to its effective date violated his due process rights. The district court agreed with Galbraith and ordered his release on parole within 30 days, subject to the original conditions of his parole. On appeal, the Parole Board's arguments include that there is no constitutionally protected liberty interest in parole. Based on Louisiana's parole statutes, we hold that, on the facts of this case, a liberty interest did arise. We AFFIRM.

No. 22-30159

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2000, Samuel K. Galbraith pled guilty to the manslaughter and attempted aggravated rape of Karen Hill in November 1988. He was sentenced to 71 years at hard labor. In November 2000, James Hill, who is the victim's surviving husband, completed a "Louisiana Department of Public Safety and Corrections Victim/Witness Notification Request Form." The form required the Parole Board to notify the named person when a parole hearing was granted for a specified inmate. The record does not contain a similar form from anyone else that requested notice regarding Galbraith's potential parole.

In the spring of 2016,[1] Galbraith filed an Application for Parole. His first possible parole eligibility date was April 23, 2017. The Parole Board set Galbraith's hearing for October 13, 2016, and sent notification letters on July 7, 2016, to Hill and Jessie McWilliams, Karen Hill's mother, advising them of their right to appear and present testimony at the parole hearing. McWilliams's letter was erroneously addressed to a post office box in Albany, New York, instead of to the same-numbered post office box in Albany, Illinois. On September 14, 2016, Galbraith's attorney requested a continuance of the October hearing until November 3, 2016, which was granted. The Parole Board sent notification letters to Hill and McWilliams on September 28, 2016, this time to their correct addresses, reflecting the new November hearing date. At this time, the Louisiana Administrative Code required notification 30 days prior to the parole hearing to be sent to "[t]he victim, spouse, or next of kin of a deceased victim." LA. ADMIN.

---

[1] Galbraith's Application for Parole is undated; however, other documents in the application reflect dates of early-to-mid 2016.

No. 22-30159

CODE, tit. 22, Pt XI, § 510(B) (eff. Aug. 2013 to Mar. 2018).[2]  Thus, the Parole Board was required to give notice only to Hill as the surviving husband.  The Parole Board did so.

A pre-parole investigation report was prepared.  The report contained statements from Hill, McWilliams, the Vernon Parish District Attorney's Office, the Vernon Parish Sheriff's Office, and the Vernon Parish sentencing judge.  They all opposed parole.  At Galbraith's parole hearing, a three-member panel of the Parole Board heard testimony or statements from those opposed to his early release.  That Board also heard from Galbraith's family members, who supported his parole.  Galbraith was represented by counsel at the hearing.  The Parole Board panel unanimously voted to grant parole to Galbraith with a scheduled release date of April 23, 2017, and with a list of specific conditions during his parole term.  The Certificate of Parole showed that Galbraith would reside in Aransas Pass, Texas, and would be subject to the authority of a parole office in Corpus Christi, Texas.

Neither Hill nor McWilliams attended the hearing, but each provided a written statement or testimony.  Both were contacted directly by someone from the Department of Corrections after the hearing and were notified of the decision.

After parole was granted, Vernon Parish District Attorney Asa Skinner filed a request for reconsideration of the parole board's decision.  He

---

[2] The statute was amended in March 2018 to require 90-days' notice and to require notice to any person who has filed a victim notice and registration form.  *See* LA. ADMIN. CODE, tit. 22, pt. XI, § 510(B) (eff. Mar. 2018 to Dec. 2018).  Victim notification errors were not a permissible basis, at least explicitly, for rescission of parole until the statute was amended in August 2019.  *Compare* LA. ADMIN. CODE, tit. 22, pt. XI, § 504(K) (eff. Jan. 2015 to Aug. 2019), *with* LA. ADMIN. CODE, tit. 22, pt. XI, § 504(K) (eff. Aug. 2019 to Jan. 2020).

sent request letters on November 15, 2016, November 30, 2016,[3] and January 9, 2017. In February 2017, the Parole Board denied Skinner's request for reconsideration, explaining that "[t]he panel voted unanimously to grant parole . . . after serious and thorough consideration" and "[t]he board's policy provides for a reconsideration review only in [limited] circumstances," none of which were applicable in Galbraith's case. Skinner and McWilliams aired their displeasure to the press, leading to negative reports that appeared in the news regarding Galbraith's imminent parole.

In early April 2017, the Parole Board and the Department of Corrections made final preparations for Galbraith's release. On April 10, 2017, Parole Board member Mary Fuentes sent an email to the Deputy Executive Counsel to Louisiana Governor John Bel Edwards. She referred to a news story regarding Galbraith's release that would air on April 13. Her concern was that the story could impact criminal justice legislation that was desired by the governor. Two days later, a single Parole Board member, Sheryl Ranatza, added electronic monitoring as a condition of Galbraith's parole. On April 20, 2017, the Parole Board received notice from Texas that the new condition of parole was accepted, and Ranatza signed and issued a Certificate of Parole with a release date of April 23, 2017.

On April 21, 2017, an email exchange occurred between Special Counsel of the Louisiana Governor's Legislative Staff and a lobbyist with Top Drawer Strategies, LLC. Both expressed concern about the negative media reports regarding Galbraith's release and potential impact on the success of the pending criminal justice reform legislation. The news report

---

[3] In one of the November 30 letters, Skinner attached a report by retired chief detective, Martin Hilton, who relayed his opinion that Galbraith may be responsible for two cold-case murders in Vernon Parish. Galbraith, however, was never charged with either of these murders, and there is no evidence in the record connecting him to those two victims.

No. 22-30159

referenced in that email exchange included details about interviews with McWilliams, who stated her victim notification letter was sent to the wrong mailing address, and with Skinner, who claimed Galbraith was responsible for two other cold-case murders in Vernon Parish.

On April 21, the same day as this email exchange, Galbraith's parole hearing docket record stated: "Rescind Pending Per Mary F," *i.e.*, board member Mary Fuentes. That day, a single Parole Board member, Jim Wise, filled in a "Parole Board Action Sheet" that rescinded Galbraith's parole based on this reason: "Other [–] There may have been tech[n]ical irregularity to victim notice."

Galbraith was not released. In a letter dated May 1, the Parole Board officially notified him of the rescission, awkwardly repeating the phrasing of the Parole Board Action Sheet:

> This correspondence is to advise you that the Parole Board has voted to rescind the parole granted at your original parole hearing.

> This action was taken due to the following:

> We have been advised that Other.
> There may have been technical irregularities notifying the victim's family.

> You will be scheduled for another hearing on 08/03/2017.

There is no evidence that the Parole Board took any action to rescind parole beyond the single board member's signature on the rescission form. The Parole Board later issued a press release announcing the decision to rescind. It explained that, even though McWilliams received notice of the November hearing and provided a statement for its consideration, the Board

No. 22-30159

was rescheduling the parole hearing "because of the apparent procedural error which occurred with the initial victim notification."[4]

In May 2017, Galbraith filed an administrative grievance, which was rejected on the ground that the Parole Board's decision was discretionary and could not be challenged. In June 2017, Galbraith's counsel sent a letter (1) contesting the decision to rescind for failure to adhere to Parole Board policy, (2) contesting the factual basis of the alleged technicality that occurred with the victim notice, and (3) advising the Parole Board that neither of the two permissible reasons for rescission of parole applied in his case. In July 2017, Galbraith, through counsel, withdrew from parole consideration for the reasons stated in his attorney's June letter.

On July 26, 2017, counsel for Galbraith filed a 42 U.S.C. § 1983 complaint in the Middle District of Louisiana challenging the Parole Board's rescission of his parole. He sought reinstatement of his parole and immediate release from prison. A year and a half later, the Parole Board filed a motion for summary judgment in which it argued Galbraith's exclusive remedy to seek release from custody was through a writ of *habeas corpus*.

On March 27, 2019, counsel for Galbraith filed a 28 U.S.C. § 2241 application, naming the warden of the prison as the defendant. We will refer to the defendant as the State since the warden was sued in his official capacity. Stating that it was due to the common legal issues, the district court stayed and administratively closed the Section 1983 proceedings pending resolution of the Section 2241 application. In its answer to Galbraith's Section 2241 application, the State argued Galbraith failed to exhaust his

---

[4] As we have already explained, the Parole Board was required to provide 30 days' notice of the hearing, and timely notice was given for the November hearing. There is no suggestion or record that McWilliams requested notification, and she was not required to be notified under the statute in effect at the time. *See supra* n.2.

No. 22-30159

available state court remedies, his application was time-barred, and his claim lacked merit because the Parole Board's rescission did not infringe any constitutionally protected liberty interest.

In a March 9, 2022, Report and Recommendation, the magistrate judge determined:

(1) Galbraith was not required to exhaust his claims because Louisiana's statutory scheme did not permit him to challenge the Parole Board's rescission under these circumstances;

(2) It was not clear if Galbraith's Section 2241 petition was subject to a limitations period;

(3) Even if a one-year limitations period was applicable, Galbraith filed a Section 1983 complaint within that time period seeking *habeas corpus* relief;

(4) Although Galbraith did not have a liberty interest in the granting of parole, there was a state-created liberty interest at issue here because the Parole Board regulations in effect at the time permitted rescission of a parole grant only in two circumstances, neither of which was applicable to Galbraith's situation;

(5) Galbraith was therefore entitled to notice and a meaningful opportunity to be heard prior to rescission of his parole grant, but he received neither; and

(6) A remand to the Parole Board to conduct a rescission hearing would be futile because neither permissible basis for rescission was applicable.

The magistrate judge recommended granting Galbraith's *habeas* application and ordering his release on parole within 30 days, subject to the original conditions of his parole as granted on November 3, 2016. The State filed objections. On March 28, 2022, the district court granted Galbraith's *habeas corpus* application "for the reasons set forth in the Magistrate Judge's

No. 22-30159

Report." The State filed a timely notice of appeal. We granted an unopposed motion to stay the district court's judgment and release order, pending appeal.

On appeal, the State argues the district court erred in its holding that (1) Galbraith was not required to exhaust state remedies, (2) Galbraith's application was not time-barred, and (3) Galbraith had a protected liberty interest in his parole grant prior to release.

## DISCUSSION

"In a *habeas corpus* appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020) (citation omitted).

We first review the district court's legal conclusion about the often-difficult issue of the proper statutory vehicle for a prisoner's claim. Different procedural hurdles apply depending on that decision. We then turn to the State's three arguments about reversible error in the district court's rulings.

### I.     *Habeas corpus application or Civil Rights suit?*

Section 2241 is a general statute permitting district courts to grant writs of *habeas corpus* to individuals who are in custody under the authority of either federal law or a state court judgment, while Section 2254 limits district courts' authority when considering *habeas* relief for state prisoners. *See Hartfield v. Osborne*, 808 F.3d 1066, 1071–73 (5th Cir. 2015). When state prisoners contest their custody and seek to obtain release, the appropriate procedure is to file a Section 2254 application. *Id*. Significant limitations apply to the right to relief under that section. *See* 28 U.S.C. § 2254(a)–(i). If the prisoner instead is contesting the "execution" of his sentence, Section 2241 is the relevant statute. *See Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). Another expression of Section 2241's applicability is that it is for

challenges to "the manner in which a sentence is carried out or the prison authorities' determination of its duration." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

"[Section] 2254 is not an independent avenue through which petitioners may pursue *habeas* relief." *Hartfield*, 808 F.3d at 1073. "Instead, all *habeas* petitions . . . are brought under [Section] 2241, and [Section] 2254 places additional limits on a federal court's ability to grant relief if the petitioner is being held in custody 'pursuant to the judgment of a State court.'" *Topletz v. Skinner*, 7 F.4th 284, 294 (5th Cir. 2021) (quoting § 2254(a)). Among those limitations is that the application "by a person in custody pursuant to the judgment of a State court" must be filed within one year of different events; relevant here is "the date on which the factual predicate of the claim" was or could have been discovered. 28 U.S.C. § 2244(d)(1)(D).

Galbraith is in custody due to a state court judgment and seeks his release by requesting the court to reinstate his parole grant. He argues the one-year limitation period is inapplicable. That is because his rights allegedly were violated when the Parole Board did not hold a hearing prior to the rescission of his parole grant, and that means he is challenging "the manner in which [his] sentence is carried out or the prison authorities' determination of its duration." *Pack*, 218 F.3d at 451.

Three possible vehicles for Galbraith's claim have been proposed: a civil rights suit under Section 1983, or a *habeas* application under either Section 2241 or Section 2254.

We start with Section 1983. A helpful precedent concerned a Section 1983 suit in which two state prisoners claimed that state authorities had violated the *Ex Post Facto* and Due Process Clauses of the Constitution. *See Wilkinson v. Dotson*, 544 U.S. 74, 76–77 (2005). The violation allegedly arose

when officials applied new, harsher guidelines for determining parole to prisoners whose crimes had been committed when less-demanding guidelines were used. *Id.* The plaintiff prisoners had been considered for parole under the harsher guidelines, were denied parole, and then deemed ineligible to seek parole again for five years. *Id.* The plaintiffs wanted immediate parole hearings under the prior guidelines. *Id.* at 77. The Court held that the constitutional claims were properly brought using Section 1983. *Id.* at 76. The Court rejected the argument that "the prisoners' lawsuits, in effect, collaterally attack the *duration* of their confinement; hence, such a claim may only be brought through a *habeas corpus* action." *Id.* at 78 (emphasis in original). "A consideration of this Court's case law makes clear that the connection between the constitutionality of the prisoners' parole proceedings and release from confinement is too tenuous here to achieve Ohio's legal door-closing objective." *Id.*

Galbraith, though, is not seeking a new hearing. He insists the parole he earlier received was improperly rescinded and should again be reinstated. He brings a direct and immediate claim about the duration of his confinement, without the contingency that existed in *Dotson* that a new hearing might not grant parole. *Habeas* is the proper procedure here.

We now examine the *habeas* application Galbraith eventually did file under Section 2241. The State argues that the one-year statute of limitations that is set out in 28 U.S.C. § 2244(d) applies. The district court disagreed, holding that Galbraith's challenge to the rescission of his parole was properly brought under Section 2241 (which has no statute of limitations) because it raised issues of "the manner in which a sentence [was] carried out," quoting *Pack*, 218 F.3d 448. Parole was not involved in *Pack*, though, so it does not directly answer whether parole fits within the category of "carrying out" a sentence.

No. 22-30159

So, how do we categorize this claim? Does Section 2254 apply to a challenge to the validity or length of the original sentence but not to disputes about whether the sentence has ended or been shortened by subsequent events? In other words, is Section 2254 inapplicable to challenges like Galbraith's to the execution of a sentence? A treatise on federal *habeas* procedures supports our characterization of Galbraith's claim as one that is about the "execution" of his sentence. *See Tolliver*, 211 F.3d at 877. The treatise concluded that challenges to the denial of federal parole are properly brought under Section 2241. Brian R. Means, Fed. Habeas Manual § 1:29, at 47 (2023) (quoting *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)). That treatise accepts that denial of parole is an act relating to the execution of the sentence.

The treatise continues:

> All courts agree that [Section] 2241 is an appropriate vehicle to challenge government action that inevitably affects the duration of the petitioner's custody, such as challenges to administrative orders revoking good-time credits, computation of a prisoner's sentence by prison officials, a right to release on parole, or other equivalent sentence-shortening devices.

*Id.* at 48.

While Galbraith is a state prisoner and the above treatise concerns federal prisoners, our circuit has extended the same reasoning that challenges to parole revocations sound under Section 2241 to state prisoners. Generally unpublished opinions offer no precedential weight, but, in this circuit, unpublished opinions issued prior to January 1, 1996, are precedential. 5th Cir. R. 47.5.3. The district court cited one such opinion. *See Richie v. Scott*, 70 F.3d 1269 (5th Cir. 1995) (unpublished but precedential under Fifth Cir. Local R. 47.5.3). In *Richie*, we rejected the district court's determination that the prisoner had to bring his claim under Section 2254, finding that a

challenge to the revocation of parole should be brought under Section 2241. *Id.* at *1 (citing *Rome v. Kyle*, 42 F.3d 640 (5th Cir. 1994) (unpublished); *Johnson v. Scott*, 56 F.3d 1385 (5th Cir. 1995) (unpublished)). If the party is not contesting the legality or validity of the sentence, Section 2254 is inapplicable. *Id.*

In another case, the *Johnson* panel rejected the state's invitation to allow parole revocation challenges under either Section 2241 or 2254. *Johnson*, 56 F.3d at *1. Rather, it acknowledged that "[o]n numerous occasion . . . this court has construed a habeas petition challenging the revocation of parole as one arising exclusively under" Section 2241, and it ruled accordingly. *Id.* (citations omitted). Another panel found that the district court "improperly characterized [the defendant's] petition as arising under Section 2254" when it was not contesting the legality or validity of the sentence. *Rome*, 42 F.3d at *2. It concluded that a petition must be construed under Section 2241 when it "is contesting the manner in which [the] sentence is being executed." *Id.*

Based on this precedent, we conclude that such a claim as Galbraith's should indeed be defined as a dispute about how a "sentence is carried out." *See Pack*, 218 F.3d at 451. Galbraith's challenge to the revocation of his parole was properly brought under Section 2241. *Richie*, 70 F.3d at *1.

A prisoner must exhaust state remedies prior to seeking relief under Section 2241. *Id.* Thus, we begin with the exhaustion requirement, discuss timeliness briefly, then conclude with examining the merits of the claim.

## II.     *Exhaustion of state remedies*

"Whether a federal *habeas* petitioner has exhausted state remedies is a question of law reviewed *de novo*." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). The "exhaustion requirement is not jurisdictional, but reflects a policy of federal-state comity . . . designed to give the State an initial

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Id.* (alteration in original) (quotation marks and citations omitted).

On appeal, the State repeats its arguments that it made to the district court that Galbraith could have raised his challenge in a state *habeas corpus* application and has failed to exhaust his state court remedies. It relies heavily on *Sinclair v. Stalder*, 867 So. 2d 743 (La. Ct. App. 2003) and *Sneed v. Hooper*, 328 So. 3d 1164 (La. 2021). The district court rejected the argument that Galbraith could have filed a state *habeas* application. That is because Louisiana's statutory scheme does not permit a challenge to the Parole Board's rescission on *any* ground, *except* for the denial of a revocation hearing. Due to the perceived lack of any available state corrective process, the district court held that Galbraith was not required to exhaust his *habeas* application and met the exception in Section 2254(b)(1)(B)(i). First, we examine those conclusions.

Federal *habeas* relief for state prisoners is limited to those applicants who have "exhausted the remedies available in the courts of the State," unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1). An applicant has not exhausted his available remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c).

The district court relied on the fact that "Louisiana's parole statutes allow for appeal of parole board actions in only one circumstance." The pertinent language in the statute is this:

> Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the

No. 22-30159

> discretion of the committee on parole. *No prisoner or parolee shall have a right of appeal from a decision of the committee* regarding release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole, *except for the denial of a revocation hearing under R.S. 15:574.9.*

La. R.S. § 15:574.11(A) (emphases added).

Another relevant statute provides that

> The committee may order revocation of parole upon a determination that:
>
> (1) The parolee has failed, without a satisfactory excuse, to comply with a condition of his parole; and
>
> (2) The violation of condition involves the commission of another felony, or misconduct including a substantial risk that the parolee will commit another felony, or misconduct indicating that the parolee is unwilling to comply with proper conditions of parole.

La. R.S. § 15:574.9(B).

Based on the Louisiana statutory language, a prisoner cannot contest a decision by the Parole Board unless he has not been afforded a revocation hearing and his parole revocation meets the requirements set forth in Section 15:574.9. Otherwise, as the district court held, there is no statutory recourse to challenge a decision by the Parole Board. Making this clear, when Galbraith attempted to file an administrative grievance to challenge the Parole Board's decision, his grievance was rejected. The stated reason was the Parole Board's policy that "decisions of these boards are d[i]scretionary and may not be challenged."

No. 22-30159

For purposes of Section 2254(b)'s exhaustion requirement, "a prisoner's state remedy must be adequate and available." *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973). Based on the statutory scheme alone, Galbraith did not have an adequate and available state remedy or corrective process that would have allowed him to bring this claim in state court.

Next, we look at the Louisiana caselaw cited by the parties and the district court. The district court discussed *Sinclair v. Stalder* and determined that "[h]ad [Galbraith] attempted to challenge rescission of his parole through the state court system, his pleadings would have been dismissed as directed in *Sinclair* because he was not denied a parole revocation hearing, which is the only permissible basis to obtain review of a Parole Board decision." The State insists the district court "conflated its own perceived likelihood of success on the merits of Galbraith's challenge with whether state review procedures were 'available' for Galbraith to pursue." We examine *Sinclair*.

In that case, a Louisiana prisoner sought review of the Parole Board's decision to deny him early release on parole. *Sinclair*, 867 So. 2d at 743–44. The court held that a state *habeas corpus* application was "the proper mechanism for an inmate who claims his initially lawful custody became unlawful due to the parole board's actions in *denying* him release on parole." *Id.* at 744 (emphasis added). The court explained that Section 15:574.11(A) has been interpreted to mean "there is no appeal of decisions of the board unless the procedural due process protections specifically afforded by the hearing provisions of 15:574.9 are violated." *Id.*; *see also Bosworth v. Whitley*, 627 So. 2d 629, 631 (La. 1993) (outlining Louisiana's system of parole and discussing that the Parole Board's decisions "generally cannot be appealed" as per Section 15:574.11). Accordingly, any challenge to actions of the Parole Board not "in accordance with 15:574.9 should be dismissed by the district court." *Sinclair*, 867 So. 2d at 744. Because Louisiana's parole statutes did

No. 22-30159

not "create an expectancy of release or liberty interest," the court held Sinclair's application failed to state a cause of action. *Id.* In that case, Sinclair challenged the parole board's decision to deny his initial application for parole, but the "parole board has full discretion when passing on applications for early release." *Id.*

Galbraith's case significantly differs from Sinclair's — most clearly in the fact that his petition for parole was granted, not denied. Galbraith had a parole hearing and was granted a Certificate of Parole. The Parole Board set his release date and arranged with the State of Texas to have Galbraith serve his parole there. Galbraith's parole grant was rescinded two days prior to his release for a reason that appears unauthorized by statute at the time.[5]

Thus, under *Sinclair*, if Galbraith would have filed a state *habeas corpus* application challenging the Parole Board's rescission, his application would have been dismissed because the claim was not based on the Parole Board's failure to provide a parole *revocation* hearing. *See id*. This supports the district court's conclusion that Galbraith was not required to meet the exhaustion requirement because there were no available state procedures to exhaust.

The State also discusses a recent Louisiana Supreme Court opinion in which the court analyzed a *habeas corpus* application that involved a

---

[5] This argument tends toward the merits review, but importantly, the Parole Board did not have the statutory authority to rescind Galbraith's parole grant for errors regarding victim notification. The relevant statute was not amended until August of 2019, at which time victim notification error was added as a permissible basis for parole rescission. LA. ADMIN. CODE, tit. 22, pt. XI, § 504(K) (eff. Aug. 2019 to Jan. 2020). At the time of Galbraith's rescission, the only permissible bases for rescission were (1) violation of the terms of work release, and (2) misconduct prior to release, and upon rescission, the parolee would promptly receive a new parole hearing. LA. ADMIN. CODE, tit. 22, pt. XI § 504(K) (eff. Jan. 2015 to Aug. 2019).

prisoner's challenge to the rescission of his parole. *Sneed*, 328 So. 3d 1164. There, a prisoner was granted parole; four days prior to his scheduled release, he collapsed and was hospitalized. *Id.* at 1164. Upon his release from the hospital, and after his parole release date had passed, he returned to prison and was issued a disciplinary report for possessing contraband that was related to his collapse. *Id.* Although he was later found "not guilty" of possessing the contraband, a single Parole Board member rescinded his parole grant a few days after that finding. *Id.*

When presented with Sneed's state *habeas corpus* application, the Louisiana Supreme Court held: (1) Sneed's limited liberty interest attached once his release date passed; (2) rescission of his parole was not available for that reason; (3) Sneed "was entitled to a revocation hearing rather than a rescission of parole"; and (4) the denial of a revocation hearing was appealable under Section 15:574.11. *Id.* at 1165. In an opinion issued a few days later, the Louisiana Supreme Court further held the district court erred by ordering Sneed to be released on parole because that was "not an available remedy" under Section 15:574.11(C) for his due process violation. *Sneed v. Hooper*, 328 So. 3d 1165, 1166 (La. 2021). The Louisiana Supreme Court remanded the case to the district court with instructions to remand the matter to the Parole Board to conduct a parole revocation hearing pursuant to Louisiana law. *Id.*

The district court distinguished *Sneed* on the ground that Sneed's parole was rescinded *after* his release date passed; thus, he came within the statutory exception to appeal the denial of what should have been a revocation hearing. The district court was correct that *Sneed*'s emphasis on the timing of the Parole Board's rescission means it does not apply here. *Sneed*, 328 So. 3d at 1166.; *see also Sneed*, 328 So. 3d at 1164–65. The Louisiana Supreme Court construed Sneed's challenge as a revocation, rather than a rescission, because he was kept in prison beyond his release date

No. 22-30159

that was scheduled before the purported rescission decision. *Sneed*, 328 So. 3d at 1164–65.

Because Galbraith's rescission occurred two days *prior* to his release date, his challenge could not be construed as a revocation of his parole as in *Sneed*; passage of the release date is a necessary event for invoking jurisdiction under Section 15:574.11. *See* § 15:574.11(A), (C). The Parole Board, here, acted beyond the scope of its own policies when it rescinded his parole. *See supra* nn.2, 5. Further, Galbraith did not receive formal, personal notice of the rescission until May 1, 2017.

We find there is an absence of available State corrective process and exhaustion of state remedies is therefore inapplicable and excused.

### III.     *Timeliness*

The State also argues that Galbraith's *habeas corpus* application needed to be brought under Section 2254, with its one-year limitations period. We already concluded that the claim here is properly brought under Section 2241 as one that challenges the execution of a sentence. There is no statute of limitations on that claim, so it cannot be dismissed as untimely.

We now examine the merits of Galbraith's *habeas* petition.

### IV.     *Valid, protected liberty interest*

Having determined that Galbraith's *habeas* application arises under Section 2241 and is not untimely, we conduct a *de novo* review of his application. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011).

Galbraith posits that the State violated his substantive and procedural due process rights by rescinding his parole grant without providing notice of the reason for rescission and an opportunity to be heard. He argues "the State created a right to parole that was granted" and, thus, that right could not be taken away without due process of law. The magistrate judge

No. 22-30159

determined Galbraith's procedural due process rights had been violated,[6] and the district court agreed.

The State contends Galbraith is not entitled to relief because "Louisiana law does not afford or entitle Galbraith a right to parole or release onto parole until" he is released from incarceration under "a validly executed Certificate of Parole." The State bases its argument on the premise that the Parole Board has unfettered discretion in *all* aspects of parole and release decisions. In support of its position, the State relies on an unpublished opinion from the Louisiana First Circuit that states:

> The parole statutes do not create an expectancy of release or liberty interest. *Sinclair,* [] 867 So.2d at 744. The parole board has full discretion when passing on applications for early release. *Id.* Even if an inmate is fully rehabilitated, the Louisiana parole scheme does not require that he be paroled. *Id.* The procedures used by the Parole Board in deciding whether an inmate should be released early are beyond the scope of this court's review. *Id.*

*Burton v. Bd. of Parole*, 2009 CA 1246, 2010 WL 503019, *1 (La. App. 1 Cir. Feb. 12, 2010). That opinion relies on *Sinclair* for its analysis, which we have already rejected as inapplicable in this case. We conclude the same now with regard to *Burton* because, there, the Louisiana First Circuit was considering an appeal from a prisoner's *denial* of parole. *Id.* The opinion discusses "expectancy of release," while the question here is whether there are limits

---

[6] The magistrate judge did not reach the question of whether there was a substantive due process violation. Because we agree with the magistrate judge that Galbraith's procedural due process rights were violated, we too do not reach the substantive due process question.

on the Parole Board to rescind parole *after* its formal grant but *before* the effective date of release.

The State also relies on a Louisiana Supreme Court decision that addressed parole eligibility for inmates sentenced to life and the commutation of those sentences. *See Bosworth*, 627 So. 2d at 630. In *Bosworth*, the state court held that state prisoners who were statutorily ineligible for parole had no protected liberty interest in parole eligibility because the Louisiana legislature set those parameters. *See id.* at 633–34. Because the analysis was limited to non-grantees, it is not instructive of whether a parole grantee — such as Galbraith — has a protected liberty interest.

Finally, the State argues a United States Supreme Court decision is dispositive. *See Jago v. Van Curen*, 454 U.S. 14 (1981). As the State puts it, that case "explicitly held that a prisoner has no protected liberty interest in parole until the prisoner is actually released on parole, even where an initial decision to grant parole is made and later rescinded." The State's summary of the Supreme Court's holding is overly broad, and the Court's analysis and holding is distinguishable from this case.

*Jago* is factually similar to this case, but there are notable differences that impacted that outcome. The *Jago* Court reversed the Sixth Circuit's decision that the Ohio Parole Board violated the prisoner's procedural due process rights when it rescinded his parole grant prior to its effective date without a hearing, a rescission based on the discovery that Jago had falsified information in his parole interview. *Id.* at 15–17. The Court held that the Sixth Circuit "erred in finding a constitutionally protected liberty interest by rel[ying] upon the 'mutually explicit understandings' language of *Perry v. Sindermann*," 408 U.S. 593 (1972). *Id.* at 17. That was because the Court's "decision in *Sindermann* was concerned only with the Fourteenth

No. 22-30159

Amendment's protection of 'property' interests, and its language, relied upon by the Court of Appeals, was expressly so limited." *Id.*

The Court reiterated that " '[t]he ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency.' " *Id.* at 20 (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)). In Ohio, parole for prisoners lay entirely within the discretion of the Ohio Adult Parole Authority. *Id.* at 16. The Court did not discuss any statutory limits on withdrawing a grant. Instead, the argument as to why process was due was based on quasi-contract. *Id.* at 17–18. The Court rejected the Sixth Circuit's approach that relied on both the general law of contracts and common law to give rise to a protected liberty interest in that particular parole context. *Id.* at 18–20.

Thus, the Ohio statutes providing for parole did not create a protected liberty interest. Jago was therefore not entitled to a hearing prior to the rescission of his parole. *Id.* at 21–22. We need to examine the Louisiana statutory framework, but we first give background on liberty interests.

Those seeking to invoke the Fourteenth Amendment's procedural protection must establish that life, liberty, or property is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.* (citations omitted). The Supreme Court has recognized a liberty interest subject to due process protection even when that interest was not created by the Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The *Wolff* case dealt with the Nebraska statutory right to good-time credit, which — according to the statute's limiting language — could only be lost due to serious misconduct:

> But here the State itself has not only provided a statutory right
> to good time but also specifies that it is to be forfeited only for
> serious misbehavior. Nebraska may have the authority to
> create, or not, a right to a shortened prison sentence through
> the accumulation of credits for good behavior, and it is true that
> the Due Process Clause does not require a hearing in every
> conceivable case of government impairment of private
> interest. But the State having created the right to good time
> and itself recognizing that its deprivation is a sanction
> authorized for major misconduct, the prisoner's interest has
> real substance and is sufficiently embraced within Fourteenth
> Amendment 'liberty' to entitle him to those minimum
> procedures appropriate under the circumstances and required
> by the Due Process Clause to insure that the state-created right
> is not arbitrarily abrogated.

*Id.* (quotation marks and citation omitted). Thus, "a person's liberty is
equally protected, even when the liberty itself is a statutory creation of the
State." *Id.* at 558. The purpose of due process protection is to shield a
person "against arbitrary action of government." *Id.* *Wolff* is directly
applicable in that it states that a liberty interest arose because of the specific,
exclusive reasons a state statute gave for losing good-time credits.

Similarly, the Supreme Court has stated that "[t]here is no
constitutional or inherent right to parole, but once a State grants a prisoner
the conditional liberty properly dependent on the observance of special
parole restrictions, due process protections attach to the decision to revoke
parole." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (quotation marks and
citation omitted). Though *Vitek* discussed parole revocation, implying that
the parole had commenced, we find it instructive for our purposes. Once a
"State grants a prisoner a right or expectation that adverse action will not be
taken against him except upon the occurrence of specified behavior, the
determination of whether such behavior has occurred becomes critical, and
the minimum requirements of procedural due process appropriate for the

circumstances must be observed." *Id.* at 490–91 (quotation marks and citation omitted).

We have applied these principles from *Wolff* and *Vitek* to reverse a grant of summary judgment that dismissed a prisoner's claim that his good-time credits were revoked without due process. *See Jackson v. Cain*, 864 F.2d 1235, 1250–51 (5th Cir. 1989).

We must look at Louisiana law to determine whether a liberty interest has been created so as to invoke due process protection.

Louisiana's parole system is codified in Louisiana Revised Statutes § 15:574.2, *et seq.* "[T]he granting, conditions, or revocation of parole rest in the discretion of the committee on parole." La. R.S. § 15:574.11(A). At the time of Galbraith's parole rescission in April 2017, the Louisiana Administrative Code provided grounds for rescinding parole once it had been granted:

> Upon notification by the secretary of the Department of Public Safety and Corrections that an offender has violated the terms of work release granted under § 311 or has engaged in misconduct prior to the inmate's release, the committee may rescind its decision to grant parole. In such cases, the inmate shall promptly receive another parole hearing.

La. Admin. Code, tit. 22, Pt XI, § 504(K) (eff. Jan. 2015 to Aug. 2019).

Thus, unlike *Jago*, the Louisiana parole authorities did not have unlimited discretion. Certainly, a liberty interest was subject to rescission in *only* two circumstances: (1) if the parolee violated terms of work release, or (2) if the prospective parolee engaged in misconduct prior to his release. The first possibility — violating terms of work-release — certainly seems relevant only after parole has been granted, but regardless, that and misconduct before parole begins were the only statutory reasons for rescinding parole prior to an inmate's release.

No. 22-30159

We agree with the magistrate judge's conclusion that these statutory provisions created a liberty interest protecting Galbraith from rescission:

> While it is true that Louisiana's parole statutes do not create a liberty interest in the granting of parole, once parole has been granted, the Parole Board's discretion to rescind that parole was statutorily limited to an objective, fact-based finding that Petitioner had either: (1) violated the terms of his work release, or (2) engaged in misconduct. Neither statutory basis was even argued, much less established in April 2017. Under the Fourteenth Amendment, Petitioner was entitled to notice and a meaningful opportunity to be heard before rescinding his parole, which did not occur.

Galbraith's parole was ostensibly rescinded because of an alleged problem with notice to a victim. He was notified of this reason on May 1, 2017, 10 days after his parole was rescinded. At the time, that was not a permissible reason to rescind his grant of parole.

Therefore, Galbraith's parole was improperly rescinded.

We AFFIRM and REMAND for the district court to release Galbraith, subject to the parole conditions set forth by the Parole Board in its original decision on November 3, 2016.